### DEVINE & THOMAS V. JACOB TAYLOR ET AL.

1. A CHATTEL MORTGAGE, GIVEN BY A PARTNERSHIP, MUST BE FILED IN TOWNSHIP WHERE EACH OF PARTNERS RESIDE.

A chattel mortgage given by a partnership and filed in the office of the county recorder, but not filed in the townships where each of the partners reside, is wholly inoperative and invalid as against creditors; the filing of a mere copy in the township where one of the partners resides, and the subsequent removal of the county recorder's office to the township where the other partner resides, are not sufficient to give validity to the mortgage.

2. AN OIL WELL CONSISTS OF THE HOLE, DRIVE PIPE, CASING AND TUBING.

An oil well, within the meaning of sec. 3184, Rev. Stat., consists, in addition to the excavation or hole in the ground, of the drive pipe which is inserted in the ground, the casing and the iron tubing; it is upon these articles only that a lien may be obtained under the general term "oil well,"

3. DRILLING AN OIL WELL IS A "JOB" WITHIN SEC. 3188, REV. STAT.

Drilling or constructing an oil well is a "job" within the meaning of sec. 3188, and several claimants, having exclusive liens upon certain specific property used in drilling or operating the well, may be permitted or required to pro rate upon that part of the property which constitutes the oil well proper.

BENTLEY, J.

This is an action on an appeal arising upon a foreclosure of a mechanic's lien claimed to have been taken upon a certain well and machinery, and appliances used in the construction of the well, and for operating it. There is also in the case a party claiming to hold certain of the property in question by virtue of a chattel mortgage. In the court of common pleas a receiver was appointed upon the application of one of the defendants, who were a partnership engaged in drilling wells and operating them for the purpose of extracting and marketing the oil and gas produced therefrom. The casing and other appliances that were used in constructing the well were taken out so far as could be, and with the engine, derrick and other material and machinery that had been used about the drilling and operating of the wells, were sold by the receiver for the lump sum of nine hundred dollars ($900).

Most of the facts are settled by agreement of the parties, except that testimony was heard in this court as to the comparative value of the various articles thus sold by the receiver, in order that a distribution might be had under the statute, in case it were found that the lien of some of the parties extended to

Devine & Thomas v. Taylor et al.

certain kinds of property and not to others, upon which other defendants have liens, etc. So that the principal facts are agreed upon and the testimony thus offered was not controverted.

It presents simply then, questions of law as to what rules should be applied in the distribution of the proceeds of the sale.

There were two oil wells; one was called No. 1 and the other No. 2. At each a derrick was erected, necessarily preliminary to the drilling of the well, and drive pipe was used in both of these wells, as well as casing, and perhaps tubing. An engine was employed at each of the wells, and one boiler used for the operation of both wells.

The plaintiffs, under a contract with the lessees who were having these wells drilled and operated, furnished the material for, and constructed the derrick at No. 2; they were paid a portion of the price therefor, but claim a balance of $194.00 due to them on account of the construction of that derrick.

Then another creditor of these lessees, The Buckeye Supply Co., furnished a portion of the pipe and appliances which were used in the construction of this well No. 2, to the amount of $123.65, and they also furnished other machinery and appliances which were used in the operation of this well No. 2. Their claim in all amounts to $559.13; all of it, except $123.65 being on account of machinery furnished for the operation of the well after its completion.

Another creditor of these lessees, Struthers, Wells & Co., claims a lien upon a large amount of the property by reason of a chattel mortgage which had been given to them by the lessees covering this property, or some portion of it, which chattel mortgage, it is claimed by the other parties, is ineffective on account of the failure of the mortgagees to comply with the statutes in regard to chattel mortgages.

Then another party defendant and creditor is one Frank Simpson, a laborer who performed labor in the construction and completion of well No. 2, and in the operation of it by attending to the pumping of the well.

And now these various creditors present their claims here for adjustment, and wish to be paid out of the proceeds of the sale as made by the receiver.

The plaintiffs filed the affidavit required in order to perfect a lien under sec. 3184, Rev. Stat., as amended in 89 O. L., 373.

The Buckeye Supply Co., also filed its affidavit under that statute. Frank Simpson, the laborer, filed his affidavit under sec. 3206a, conceiving that his rights were governed by that statute, but he now claims that his right arises not only under sec. 3206a, but he also claims that he has a lien under the provisions of sec. 3184.

Struthers, Wells & Co.'s claim rests wholly upon the validity of their chattel mortgage, and before proceeding with the disposition of the other claims, we will speak of the chattel mortgage.

The lessees who gave this chattel mortgage were partners. They were Simpson brothers and a man by the name of White. Simpson brothers resided in Portage township of this county, and White resided in the township where this courthouse now is, being Plain township.

At the time the chattel mortgage was made, the office of the county recorder was in another part of the village of Bowling Green, and was within the township of Center. Sometime after the chattel mortgage was filed, on account of the destruction of the old courthouse to make room for the new one, the county offices were removed to this building in Plain township. This chattel mortgage was filed originally in the recorder's office of this county, it then being in Center township. At that time no one of the mortgagors resided in Center township. The mortgagees, upon filing this instrument with the county recorder as I have stated, had a copy made of the entire mortgage including the affidavit and verification, and filed it with the township clerk of Portage township, but filed no original paper there, neither chattel mortgage, nor affidavit of verification.

The mortgagees took no further steps than I have indicated, but they claim that when the office of county recorder was moved, for the reason I have stated, over into Plain township, where Mr. White resided, both at the time the chattel mortgage was given and when the recorder's office was moved, that that gave some validity to the chattel mortgage.

Now, after investigating this matter and the statute regarding chattel mortgages, we see no fair chance of upholding the claims of these mortgagees.

In *Aultman & Co.* v. *Guy*, 41 O. S., 598, it is said that a chattel mortgage given by partners, in order to have effect, must be filed in each township where any of the partners reside. So that in order to perfect a lien it was necessary to file the chattel mortgage in Portage and Plain townships, because the partners resided, respectively, in these two townships.

The chattel mortgage was not filed in either of these townships, and what was filed in Portage township was a mere copy and ineffective to create a lien, as is held in the case in the *Cross, trustee*, v. *Carstens*, 49 O. S., 548. So that, whether the removal of the county recorder's office subsequently to this township where Mr. White resided, would under the circumstances affect anything or not, it was not sufficient to give validity to this chattel mortgage, and as against creditors, it would be wholly inoperative and invalid.

These other parties are creditors of these mortgagors, and while some of them have not reduced their claims to judgment, yet we think in a proceeding of this kind their claims must be treated as claims of creditors against this property.

It is not the person of the creditor, to be sure, which is to be considered in determining whether a chattel mortgage is or is not valid as against his claim. Chattel mortgages, under the statute, are invalid under certain circumstances, but that means as against the legal process caused to be issued by creditors to subject the property, whether by execution, or in any other form in which the law authorizes creditors to proceed, and while some of these creditors have not attached the property or levied upon it, and while the receiver was appointed, not upon the application of these lienholders, yet we think that that action of the court appointing the receiver necessarily subjected the whole property to the jurisdiction of the court to be distributed; and necessarily these creditors, all of them, became interested in the proceeding. They could not thereafter follow the property by any process of their own; and while they might not in all cases be strictly parties to the action, yet they were interested in it to such an extent, that we regard the whole proceeding as a proceeding to subject the property to the claims of creditors, and therefore the law making chattel mortgages in certain cases invalid as against creditors, applies as to all lienholders; so that Struthers, Wells & Co. are merely general creditors, having this claim against the lessees, and are to participate in the fund arising from the sale simply as general creditors.

I call special attention to sec. 3184, Rev. Stat., in order to determine the respective rights of these other parties. The section reads as follows: "A person who performs labor, or furnishes machinery or material for constructing, altering or repairing * * * or for the digging, drilling or boring, operating, completing, or repairing of any gas well, oil well, or any other well, by virtue of a contract with the owner or his authorized agent, shall have a lien to secure the payment of the same upon such gas well, oil well, or any other well, and upon the material and machinery so furnished, and upon the interest of the owner in the lot or land on which the same may stand, or to which it may be removed."

That provides that such a person shall have a lien upon the well in the first place. Second, upon the machinery or articles which he shall furnish for this purpose. Third, upon the interest of the owner of the lands upon which the pull is situated.

Now, what constitutes an oil well? Because it is evident that the statute does not mean to include in the general term "oil well" everything that may be used in connection with its construction or operation, because it gives a lien

upon the *well* by reason of furnishing machinery, and upon the *machinery*. If it gives necessarily a lien upon the machinery used in and about a well as a part and parcel of the well, it would have been unnecessary to provide that the person furnishing should have a lien upon the machinery itself. So we think that under this statute the three things that a lien may be obtained upon are as I have stated.

Now, a well consists, as we understand, of a hole in the ground for one thing, through the rock, and down perhaps to the valuable mineral, and necessarily in its construction and as a part of the construction itself, drive pipe is used which is inserted in the ground and left there as long as the well is in use. Then casing is used and goes down still further into the rock, and becomes, as we think, under the provisions of the statute, a part of the well upon which a lien may be obtained under the general term "well;" and from the best light we have as to the manner of connecting tubing with the well, that being iron pipe fastened by means of a packer in the well, and is a necessary part of its construction, though occasionally removed and removable, still liberally construing the statute, that may be said to be a part of the oil well, and so far as we are advised, these articles are all that do comprise an oil well.

The derrick, to be sure, is necessary for its construction, but it is not fastened to the well. It may be used for one well and then taken down and used for another well, and it is used ordinarily in the operation of a well, but it is such a thing as is ordinarily furnished by a different man from the man or men who furnish the other appliances about the well.

The statute gives a lien upon the articles which a particular person furnishes, and in this case these plaintiffs furnished the labor and material for the derrick and obtained a lien under sec. 3184, and we think they obtained a lien upon that derrick. That is all the plaintiffs did furnish, that derrick—and they obtained a lien upon it. They furnished it, however, in the operation of the drilling of the well, as a necessary part of it, and obtain a lien under sec. 3184, not only upon the derrick, but upon the well; that is, upon those appliances which we think constitute a part of the well itself, and the rest of the property that is mentioned in this case, we think they did not get any specific lien upon.

It is said in sec. 3188, Rev. Stat., "if several liens be obtained by several persons on the same job in the manner prescribed by the foregoing section, they shall have no priority among themselves." We think this is a "job" and is to be construed as providing that the plaintiffs and the other parties, The Buckeye Supply Co., are to pro rate upon that part of the property which constituted the well proper. The Buckeye Supply Co. furnished part, and they are to be let in upon the job of constructing the well. The rest of this machinery was furnished for the operation of this well, and they are given a lien upon the property which is thus used in the operation of the well, and which they furnished. As to that property other than the well proper and the derrick, their lien is superior to any claim of the plaintiffs.

We are unable to see that either of these parties obtained anything under the third subdivision that I have spoken about, viz.: Upon the land—the leasehold interest of these parties in the land itself, which cannot avail here because the land itself or any interest in it was not sold. There is nothing in the hands of the receiver as the proceeds of the leasehold interest or land.

We do not think they could obtain a lien upon No. 1 well, and the articles used in connection with it, under the provisions of the statute, as constituting a leasehold interest of the parties in the land itself.

Now, Simpson was a laborer employed in pumping the well. He did not file the affidavit required by sec. 3184, and we are unable to see that he obtained any lien under that section.

He thought, and he thought correctly, that his claim must be under sec. 3206a. Section 3206a provides that the liens for labor, there provided for, shall be inferior and subject to whatever liens are taken out under sec. 3184, and this is

a general lien upon all the real property of his employer. The section provides that such person performing manual labor shall have a lien upon the real property, which is superior to certain liens, etc. He filed the affidavit under that section and obtained whatever he has under it. While there was no real property of any value, the proceeds of which are to be distributed in this action, there is a provision that when property is sold by a receiver and its proceeds are distributed, the laborers who have been so engaged for three months next preceding the appointment of the receiver shall be paid first out of the proceeds before general creditors, etc. He comes under this clause, and so far as his claim is concerned, we think he obtained a lien in preference to the other general creditors who appear in this case. As the parties are substantially one as regards the facts in the case, we need not figure out the amount, leaving that to the attorneys. But there is a general property to be distributed: The proceeds of No. 1 well and its appliances, and there may be some property that the receiver has sold and as to which the Buckeye Supply Co. have no lien in the premises as I have stated them, and if so, that is general property subject to the general claims of creditors, except that out of it first should be paid the claim of Simpson, the laborer.

I believe there has been no particular amount of costs made from the conflict of liens here. There has been a struggle in the application of the law, and we think that under the circumstances the whole fund should bear the burden of the costs of the action. Those should be paid first, and then the balance of the fund distributed as I have indicated.

*Baldwin & Harrington,* for plaintiffs.

*Ira C. Taber* and *W. W. Chapman,* for defendants.

---

Dec. 100.

# TAXATION OF NATIONAL BANK STOCK.

[Lorain Circuit Court, October Term, 1894.]

Baldwin, Caldwell and Hale, JJ.